**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-1069 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| RICHARD COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACTS, CONCLUSIONS OF LAW & ORDER**

Having conducted a one-day Bench Trial on February 18, 2020, the Court hereby rules as follows.

**FINDINGS OF FACT**

*Defendant's willful failure to report his foreign accounts*

1.     Defendant Richard Collins ("Mr. Collins") is a sophisticated taxpayer, with a sophisticated understanding of finance, financial obligations and financial consequences that are well beyond that of an average person.  (Trial Tr. at 220:15–19.)

2.     Mr. Collins knew that, when he approved his tax submissions in 2007 and 2008, he held financial accounts in foreign countries.  (Trial Tr. at 220:21–23.)

    a.     Mr. Collins identified an interest in keeping his foreign accounts secret in the United States and consciously avoided disclosing his accounts.  (Trial Tr. at 221:1–4.)

    b.     Mr. Collins's course of conduct reflects an actual intent to deceive the IRS and others about the existence of his foreign accounts, including his effort to avoid receiving mail from UBS in the United States, as well as his express desire to "discreetly" transfer

funds from Switzerland to the United States in connection with a mortgage transaction. (Trial Tr. at 221:5–19; *id.* at 129:13–133:19; Pl.'s Exs. P25–P28.)

c.      Mr. Collins has sought to excuse his conduct based on a multitude of objectively unreasonable beliefs, including those that:

   i.   By filing an IRS Form W-9 with UBS, he satisfied his reporting obligations for all of his foreign accounts (including those for which he did not file a W-9) (Pl.'s Ex. P63);

   ii.  The U.S. Embassy in Paris advised Mr. Collins, in the 1970s, that he did not have any obligations to the IRS (Pl.'s Ex. P56);

   iii. As long as his foreign banks withheld taxes, Mr. Collins was not obligated to disclose his accounts to the IRS (though Mr. Collins did not ensure that UBS actually withheld funds) (Pl.'s Ex. P58 at *14; Doc. 42 at 7);

   iv.  Disclosing his accounts to his U.S. accountant, Dale Cowher, would increase the costs required for Mr. Cowher to perform any necessary paperwork (Pl.'s Ex. P35, Pl.'s Ex. P58 at *14); and

   v.   Swiss bank secrecy laws precluded Mr. Collins from disclosing his foreign accounts to his U.S. accountants (Pl.'s Ex. P54).

*Mr. Collins's 2007 foreign account balances*

3.      On or about August 13, 2013, Mr. Collins signed a Report of Foreign Bank Accounts (known as an "FBAR") for 2007 in which he reported his interests in foreign accounts with HSBC (located in Canada), Le Credit Lyonnais (located in France) and UBS (located in Switzerland).  (Pl.'s Ex. P14.)  Those interests totaled $885,913.  (*Id.*)

4.     Mr. Collins admits that his three HSBC accounts had a maximum aggregate balance of at least $10,696 in 2007.  (Pl.'s Ex. P14.)

5.     Mr. Collins admits that his Le Credit Lyonnais account had a maximum balance of at least $13,516.12 in 2007.  (Pl.'s Ex. P14.)

6.     Mr. Collins admits that his UBS account had a maximum balance of at least $861,700 in 2007.  (Pl.'s Ex. P14.)

*Mr. Collins's 2008 foreign account balances*

7.     On or about August 13, 2013, Mr. Collins signed an FBAR for 2008 in which he reported his interests in foreign accounts with HSBC, Le Credit Lyonnais and UBS.  (Pl.'s Ex. P15.) Those interests totaled $906,004.  (*Id.*)  Mr. Collins did not report his interest in his Wegelin account (located in Switzerland).  (*Id.*)

8.     Mr. Collins admits that his four HSBC accounts had a maximum aggregate balance of at least $12,624 in 2008.  (Pl.'s Ex. P15.)

9.     Mr. Collins admits that his Le Credit Lyonnais account had a maximum balance of at least $31,681 in 2008.  (Pl.'s Ex. P15.)

10.     Mr. Collins admits that his UBS account had a maximum balance of at least $861,700 in 2008.  (Pl.'s Ex. P15.)

11.     Mr. Collins's UBS account had at least $302,715 in October 2008.  (Pl.'s Ex. P22.)

12.     In October 2008, Mr. Collins closed his UBS account and transferred all of its funds to his Wegelin account.  (Doc. 72 (Trial Tr.) at 150:20–25; Pl.'s Ex. P29.)

13.     Mr. Collins's Wegelin account had a maximum balance of at least $397,519 in 2008. (Pl.'s Ex. P62.)

*IRS's civil FBAR penalty assessments against Mr. Collins*

14.     On June 26, 2015, the IRS informed Mr. Collins via letter of its determination to propose civil FBAR penalties assessments against him for 2007 and 2008.  (Pl.'s Ex. P58 at 4–29.)

15.     The IRS proposed civil FBAR penalties against Mr. Collins of:  (a) $154,032 for his willful failure to report his foreign accounts on an FBAR for 2007; and (b) $154,032 for his willful failure to report his foreign accounts on an FBAR for 2008.  (Pl.'s Ex. P58 at 4–8.)

16.     The IRS's June 26, 2015 letter was accompanied by FBAR lead sheets explaining the decision, (Pl.'s Ex. 58 at 9–29), and a penalty calculation chart entitled "Willful Penalty Calculation – Mitigation," (Pl.'s Ex. P58 at 8; *see also* Pl.'s Ex. P42).  The chart detailed how the IRS calculated the proposed penalty assessments.  (*Id.*)

17.     For each unreported account and for each year that the account was not reported in a timely filed FBAR, Congress authorized the Secretary of the Treasury to assess a civil willful FBAR penalty of $100,000 or $50% of the balance in the account at the time of the violation, whichever is greater.  31 U.S.C. §§ 5321(a)(5)(C)(i), 5321(a)(5)(D)(ii).

18.     The proposed penalty assessment amounts against Mr. Collins were based on the maximum account balances of his foreign accounts for 2007 and 2008, and/or the balances of his foreign accounts on the FBAR filing dates.  (Trial Tr. at 48:2–50:17; Pl.'s Exs. P14, P15, P22, P42, P62.)

    a.     With the exception of two accounts, maximum balances were taken from what Mr. Collins reported on his 2007 and 2008 FBARs.  (*Compare* Pl.'s Ex. P42 (Column 1) *with* Pl.'s Exs. P14 & P15.)

    b.     Although Mr. Collins reported a maximum balance of $861,700 for his UBS account on his 2008 FBAR, the IRS used $302,715 as the maximum UBS account

balance for that year based on a October 2008 UBS account statement.  (Pl.'s Ex. P42 (Column 1) & n.2; *compare* Pl.'s Ex. P15 *with* Pl.'s Ex. P22.)

c.      Although Mr. Collins did not report his Wegelin account on his 2008 FBAR, the IRS used a maximum balance of $397,519 for that account and year based on a December 2008 Wegelin account statement.  (Pl.'s Ex. P62.)

d.      For the balance of Mr. Collins's UBS account on June 30, 2008, the IRS used $760,490, based on a UBS treaty document showing a June 2008 monthly balance of 776,113.89 in Swiss Francs and a conversion rate of 0.97987.  (Pl.'s Ex. P42 (Column 2) & n.1; Pl.'s Ex. P30.)

e.      For the balance of Mr. Collins's Wegelin account on June 30, 2009, the IRS used $397,519.  This was lower of the Wegelin account balance as of December 31, 2008, and the Wegelin account balance as of December 31, 2009 (which was $721,953).

(Pl.'s Ex. P42 (Column 2) & n.3; Pl.'s Ex P62 at 1; Pl.'s Ex. P32 at 12.)

19.     The proposed penalty assessment amounts against Mr. Collins were also informed by the IRS's (non-binding) internal guidance regarding when taxpayers are eligible for mitigation from the statutory maximum.  (Pl.'s Exs. P42, P58; Trial Tr. at 46:4–47:2, 48:21–50:17; I.R.M. 4.26.16.4.6.1, 4.26.16.4.6.3.)

a.      The penalty calculation chart identifies four mitigation levels that the IRS could apply to the penalty amounts as to each account for each year.  (*Id.*)

20.     Under this internal mitigation guidance, the IRS would have assessed civil FBAR penalties against Mr. Collins of:  (a) $382,666 for his willful failure to report his foreign accounts on an FBAR for 2007; and (b) $233,462 for his willful failure to report his foreign accounts on an FBAR for 2008.  (Pl.'s Ex. P42; Trial Tr. at 49:15–50:12.)

21.     Notwithstanding the foregoing, the IRS further reduced the mitigated penalties after considering the facts and circumstances of Mr. Collins's case.  (Pl.'s Ex. P58 at 9.)

22.     The IRS ultimately proposed willful FBAR penalty assessments for 2007 and 2008 that were each half of the average of the penalties calculated under the mitigation guidelines.  (Pl. Ex. P42; Trial Tr. at 49:15–50:17.)

23.     On July 20, 2015, Mr. Collins filed a protest in response to the proposed civil FBAR penalties against him, and requested an appeal with the IRS.  (Pl.'s Ex. P56.)  Mr. Collins did not contest the IRS's penalty calculations, other than to:  (a) challenge its determination that his failure to report his foreign accounts was willful; and (b) observe that he might have been assessed fewer penalties had he remained in one of the IRS's voluntary disclosure programs.  (*Id.*)

24.     On August 26, 2016, a delegate of the Secretary of Treasury, in accordance with 31 U.S.C. § 5321, assessed a civil FBAR penalty of:  (a) $154,032 against Mr. Collins for his willful failure to report his foreign accounts on an FBAR for 2007; and (b) $154,032 against Mr. Collins for his willful failure to report his foreign accounts on an FBAR for 2008.  (Pl.'s Ex. P43.)

25.     On August 26, 2016, the delegate of the Secretary of the Treasury provided Mr. Collins with notice of the FBAR assessments against him and demanded payment thereof.  (Doc. 2 ¶ 30.)

26.     On September 1, 2016, the IRS Appeals Office notified Mr. Collins that it was sustaining the willful FBAR penalties assessed against him and denied his appeal.  (Pl.'s Ex. P58.)

*Mr. Collins's current financial situation*

27.     Mr. Collins reported over $1.3 million held in foreign financial accounts on his 2018 income tax return.  (Pl.'s Ex. 61 at Form 8938.)

28.     Mr. Collins testified he receives roughly 700 Euros a month in pension benefits in his French account.  (Trial Tr. at 194:24–195:4.)

29.     Mr. Collins testified he also receives around 1,000 Canadian dollars (or about 700 in U.S. dollars) a month in pension benefits in his Canadian account.  (Trial Tr. at 195:5–17.)

30.     Mr. Collins estimated that he receives approximately $1,200 a month in social security benefits.  (Trial Tr. at 195:18–196:1.)

31.     Mr. Collins owns his house, which does not have a mortgage, and which he estimates is worth around $225,000.  (Trial Tr. at 196:12–17.)

32.     Mr. Collins also has domestic investments, which he testified he did not know the size of.  (Trial Tr. 196:18–197:5.)

33.     Mr. Collins is further receiving required minimum distributions from his retirement account, which he also testified that he was unable to estimate the size of.  (Trial Tr. at 197:6–15.)

34.     In 2016, after the IRS proposed willful FBAR penalties against him, Mr. Collins transferred both his and his wife's assets into an irrevocable family trust whose beneficiary is his daughter.  (Trial Tr. at 198:6–17)  Mr. Collins testified that the trust held $2.5 million dollars.  (*Id.*)

*The amount of penalties now requested*

35.     Based on the evidence presented at trial, Plaintiff presently seeks to impose FBAR penalties totaling $308,064, inclusive of both tax years, and requests the opportunity to submit an updated calculation of Mr. Collins's liability as of the date of judgment, including fees, penalties and interest.

## CONCLUSIONS OF LAW

**A. Pursuant to the law of the case, the Court will apply *de novo* review in determining the validity of the FBAR penalties.**

36.    Consistent with its Order dated February 12, 2020 (Doc. 67), the Court applies *de novo* review.  *Id.* (citing and quoting *U.S. v. Markus*, 2018 WL 3435068, *4 (D. N.J. July 17, 2018) and *Bedrosian v. U.S.*, 2017 WL 3887520, *1 (E.D. Pa. Sept. 5, 2017)).

37.    Plaintiff's burdens are tested under the preponderance of the evidence standard. *Bedrosian* at *1.  In satisfaction of said standard, Plaintiff has established that Mr. Collins failed to report his interests in foreign financial accounts; that his failure was willful; it has shown the balance-amounts in the relevant accounts, at the relevant times; and that, based on those balances, the penalties-imposed were within the range authorized in Section 5321(a)(5).

38.    As a mixed-matter of fact and law, Mr. Collins's circumstances bring to mind the adage, "the coverup often is worse than the crime."

39.    Understandably, Mr. Collins and his counsel very much wish for the Court to compare his putative tax-liability, had he properly reported his foreign accounts, against his penalty-liability under Section 5321(a)(5).

40.    Such an approach appears intuitive, and the question is one likely-begged by any factfinder under the circumstances.

41.    Nevertheless, the evidence reveals on the part of Mr. Collins a decades-long course of conduct, omission and *scienter*.  That is the more salient inquiry, and Plaintiff has proven that the penalties-imposed are consistent with the law.

42.    In support of these determinations, the Court incorporates by reference, as if fully restated, the contents of Plaintiff's Proposed Facts & Conclusions (Doc. 79) at ¶¶ 66-76.

**B. In the alternative, the FBAR penalties are sustainable under the abuse-of-discretion standard, because they were the product of reasoned decision-making, and were not otherwise arbitrary, capricious, an abuse of discretion or contrary to law.[1]**

### i. The abuse-of-discretion standard

43.     "It is old law, of course, that an agency sanction within statutory limits can be upset only if it reflects an abuse of discretion." *Haltmier v. Commodity Futures Trading Comm'n*, 554 F.2d 556, 563 (2d Cir. 1977) (citing *American Power & Light Co. v. SEC*, 329 U.S. 90, 112–13 (1946) and *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 18586 (1973)).  In such circumstances, the agency's choice of a particular sanction can only be overturned if it is "unwarranted in law or without justification in fact." *Amanat v. SEC*, 269 F. App'x 217, 219–20 (3d Cir. 2008); *see also Sultan Chemists, Inc. v. EPA*, 281 F.3d 73, 83 (3d Cir. 2002) ("The EPA is charged with choosing the means by which to enforce and achieve the goals of FIFRA. In such a case, heightened deference is due to the agency's penalty [calculation].")

44.     The FBAR penalty is one such penalty, as the Secretary of the Treasury is afforded the discretion to assess a penalty in an amount up to a statutory ceiling.  S*ee* 31 U.S.C § 5321(a)(5)(A) ("the Secretary of the Treasury *may* impose a civil penalty"*)* (emphasis added).[2]

45.     Courts reviewing the amounts of FBAR penalty assessments have applied the "abuse of discretion" standard, borrowed from § 706 of the Administrative Procedure Act ("APA"). *See, e.g.*, *United States v. Rum*, No. 8:17-CV-826-T-35AEP, 2019 WL 3943250, *9 & n.22

---

[1]  The conclusions of law that follow apply if a reviewing court determines that the abuse-of-discretion standard applies.  The Court having found that the penalties are sustainable under a more rigorous *de novo* standard, it stands to reason that they withstand scrutiny under the abuse-of-discretion standard; and the Court now expressly so holds.

[2]  The Financial Crimes Enforcement Network ("FinCEN"), a bureau of the Department of Treasury, has "[o]verall authority for enforcement and compliance" of the FBAR requirement. 31 C.F.R. § 1010.810.  FinCEN has, however, redelegated civil FBAR examination and penalty authority to the IRS.  *Id.* (g); I.R.M. 4.26.16.2.2(4).

(M.D. Fla. Aug. 2, 2019), *report and recommendation adopted*, No. 8:17-CV-826-T-35AEP, 2019 WL 5188325 (M.D. Fla. Sept. 26, 2019); *Moore v. United States*, No. C13-2063RAJ, 2015 WL 1510007, *4 n.3, *7–8 (W.D. Wash. Apr. 1, 2015); *United States v. Williams*, No. 1:09-CV-00437, 2014 WL 3746497, *1 & n.1 (E.D. Va. June 26, 2014) (on remand, reviewing the penalty amount for "abuse of discretion").

46.     Under § 706, "a court must hold unlawful and set aside agency actions, findings, and conclusions found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  5 U.S.C. § 706(2)(A).

47.     This standard is both narrow and deferential, as "the Court must not substitute its judgment for the agency's, and must only review the record to ensure that the agency engaged in reasoned decision-making and that there was a 'rational connection between the facts found and the choice made.'"  *Williams*, 2014 WL 3746497 at *1.

48.     The application of this standard is limited in the FBAR context because Congress did not enumerate factors for the Secretary to consider in calculating the FBAR penalty.  *Compare* § 5321(a)(5)(C) & (D) *with* 42 U.S.C. § 256b(d)(1)(B)(vi) (providing for civil money penalties to be assessed according to standards set forth by regulation); *and* 33 U.S.C. § 1319(d) (stating factors for the court to consider in setting amount of Clean Water Act penalty).

49.     Section 5321 merely states that the penalty shall be the greater of $100,000 or 50% of the balance in the account at the time of the violation.  31 U.S.C. § 5321(a)(5)(C) & (D).

> ***ii.     If the de novo standard does not apply, the Court's review of the amounts of Mr. Collins's FBAR penalties is limited to the subset of trial exhibits that comprise the administrative record.***

50.     Consistent with general conventions of administrative law, the reasonableness of the amounts of the IRS's assessments must be "judged in accordance with its stated reasons."

*See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998).

51.     The Court performs its review based on the record that actually "formed the basis for the agency's decision, unless there was such a failure to explain administrative action as to frustrate effective judicial review.'" *John Doe, Inc. v. DEA.*, 484 F.3d 561, 570 (D.C. Cir. 2007).

52.     To be complete, this record must include the "fundamental documents" that would have formed the basis for the agency's decisions. *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 195 (3d Cir. 2006).

53.     The "fundamental documents" that formed the basis of the IRS's penalty calculations here consist of Mr. Collins's OVDP submissions, his FBARs filings, his correspondence with the IRS during his audit and administrative appeal, his foreign account statements and the IRS FBAR decision documents.  (Pl.'s Exs. P14, P15, 22, P30, P32, P33, P34, P42, P50, P56, P58, P62, P63.)

54.     Assuming the *de novo* standard does not apply, the Court cannot consider trial exhibits or testimony beyond the documents that comprise the administrative record.  *See generally NVE*, 436 F.3d at 185.

55.     Even if the record reflects "less than ideal clarity," the Court must sustain the amount of the IRS's assessments "if the agency's path may reasonably be discerned."  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

56.     To the extent that the Court somehow concludes that the record before the IRS does not support its computation, or the record is so lacking that the Court cannot evaluate the IRS's calculation, "the proper course is for the Court to remand the matter back to the IRS." *See generally Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985); *W.R. Grace &*

*Co. v. EPA*, 261 F.3d 330, 338 (3d Cir. 2001); *Moore*, 2015 WL 1510007 at *10–11; *accord Rum*, 2019 WL 3943250 at *9.

57.     The penalty assessments must be upheld unless the Court finds that, in assessing $154,032 for 2007 and $154,032 for 2008 (amounts considerably less than the statutory maximum), the IRS

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*See State Farm*, 463 U.S. at 50.

58.     In making this determination, the Court is limited those documents that "formed the basis" for the IRS's decision.

59.     To the extent this Court determines that the FBAR penalties were somehow arbitrary and capricious, the Court must remand the case back to the IRS, rather than substitute its judgment for that of the agency and determine an appropriate penalty amount.

> ### iii.     The IRS's penalty calculations were within statutory limits and were rational.

60.     The only limit Congress placed on the IRS's discretion when calculating the willful FBAR penalty was capping the maximum penalty for each account at the greater of $100,000 or 50 percent of the balance in the account at the time of the violation.  *See* 31 § 5321(a)(5)(C) & (D).

61.     Although IRS internal guidelines do not bind the agency, *see Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019), the IRS's adherence in this case to these guidelines indicates that its penalty calculations were proper.  *See Estate of Duncan v. Comm'r of Internal*

*Revenue*, 890 F.3d 192, 200 (5th Cir. 2018) ("courts can draw on IRM guidelines as factors to assess the propriety of IRS actions"); *cf. Moore v. United States*, 2015 WL 1510007 at *8 n.5.

62.     These nonbinding "mitigation" guidelines assist examiners in determining whether to reduce an FBAR penalty below the statutory maximum.  (Pl.'s Exs. 42, 58 at 27.)  *See generally* I.R.M. 4.26.16.4.6.1, 2008 WL 5900937 (July 1, 2008); I.R.M. 4.26.16.4.6.3, 2008 WL 5900939 (July 1, 2008).  First, examiners consider whether the taxpayer's case satisfies four conditions: (a) the taxpayer has no history of FBAR penalty assessments or criminal tax or Bank Secrecy Act convictions; (b) the funds in the accounts were not from an illegal source or used to fund a criminal purpose; (c) the taxpayer cooperated during the examination; and (d) the IRS did not assess a civil fraud penalty against the taxpayer with respect to the income attributable to a foreign account.  *Id.*  If these conditions are met, examiners may mitigate the penalty below the statutory maximum by different amounts depending on the balances in each account.  *Id.*

63.     As explained in the FBAR lead sheets and penalty calculation chart, the IRS exercised its discretion in a reasoned manner when it determined that Mr. Collins was eligible for mitigation under its guidelines, calculated mitigated penalties based on those guidelines and further reduced the mitigated penalties after considering the facts and circumstances of his case.  (Pl.'s Exs. P42, P58.)

64.     Mr. Collins's delinquent 2007 FBAR reported five foreign accounts with an aggregate maximum balance of $885,913, and his 2008 FBAR reported six foreign accounts with an aggregate maximum balance of $906,004.  (Pl.'s Exs. P14 & P15.)

65.     The IRS assessed willful FBAR penalties of $154,032 for 2007 and $154,032 for 2008.

66.     The $154,032 penalty for each year is well below the statutory maximum (the greater of $100,000 or 50% of the account balance for *each* unreported account).[3]  *See* 31 U.S.C. § 5321(a)(5).

67.     Nothing (other than the statutory maximum) precluded the IRS from assessing far higher penalties than it ultimately did.  *Williams*, 2014 WL 3746497 at *2 (affirming IRS's assessment of maximum civil FBAR penalties because, although "the IRS *may* impose a lower penalty where the violating taxpayer meets certain criteria, such departures are within the discretion of the agency") (internal citation omitted).

68.     There is no evidence from which the Court may conclude that the penalties were assessed for an improper purpose. *See Williams*, 2014 WL 3746497 at *2.

69.     The FBAR lead sheets (Pl.'s Ex. 58 at 9–29), along with the penalty calculation chart (Pl.'s Ex. 42), demonstrate that the IRS "made a reasoned decision after considering the relevant factors." *Williams*, 2014 WL 3746497 at *2.

70.     Accordingly:

    a.     Richard Collins is liable to the United States for a civil penalty of $154,032, plus interest and statutory additions that continue to accrue according to law as of August 26, 2016, for his willful failure to timely report his interest in foreign financial accounts for 2007; and

    b.     Richard Collins is liable to the United States for a civil penalty of $154,032, plus interest and statutory additions that continue to accrue according to law as of August 26,

---

[3]  For example, the IRS could have, based on an account balance of $760,490, assessed a willful FBAR penalty of $380,245 with regard to Collins's UBS account for 2007 (for just that one account and one year).  (Pl.'s Ex. P42.)

2016, for his willful failure to timely report his interest in foreign financial accounts for
2008.

### iv.     *FBAR penalties are not limited to $100,000, and the willful FBAR penalties assessed against Mr. Collins were well within permissible bounds.*

71.     In 2004, Congress increased the maximum civil penalty for willful FBAR violations
(for each account) from $100,000 to the greater of $100,000 or 50 percent of the account
balance.  *See United States v. Cohen*, No. CV 17-1652-MWF (JCX), 2019 WL 4605709, *3
(C.D. Cal. Aug. 6, 2019).  The Secretary did not amend a 1987 regulation, which had capped the
penalty at $100,000, to reflect this increased statutory maximum.

72.     Although two earlier courts have found otherwise,[4] as the last nine courts (including the
Federal Circuit) to have considered the issue have found, "[s]tatutes trump regulations."
*See Cohen*, 2019 WL 4605709 at *4 (collecting cases); *Norman v. United States*, 942 F.3d 1111,
1118 (Fed. Cir. 2019); *United States v. Rum*, 2019 WL 3943250 at *6–7, *report and
recommendation adopted*, 2019 WL 5188325 at *2.

73.     The Court rejects Mr. Collins's claim that a regulation from 1987 overrides the statutory
maximum amended by Congress in 2004.  *See Norman*, 942 F.3d at 1118 ("the 2004 amendment
. . . rendered void the 1987 regulation").

---

[4]  *See United States v. Wahdan*, 325 F. Supp. 3d 1136 (D. Colo. 2018); *United States v. Colliot*,
No. 16-1281-SS, 2018 WL 2271381 (W.D. Tex. May 16, 2018).

**C. The willful FBAR penalties assessed against Mr. Collins are not unconstitutionally excessive under the Eighth Amendment.**

74.     The Eighth Amendment prohibits excessive "fines," *United States v. Bajakajian*,

524 U.S. 321, 327–28 (1998); and a fine violates the Excessive Fines Clause only if it is "grossly

disproportional to the gravity of a [defendant's] offense." *Bajakajian*, 524 U.S. at 324.

75.     The penalties at issue are neither fines nor are they excessive.

### *i.   A civil FBAR penalty is not a fine within the scope of the Eighth Amendment.*

76.     The civil FBAR penalties assessed against Mr. Collins are not "fines" covered by the

Eighth Amendment because they are not "punishment for some offense." *Bajakajian*, 524 U.S.

at 329 (internal quotation marks omitted).

77.     In *Bajakajian*, the Supreme Court held that a sanction is a punishment if it is "imposed at

the culmination of a criminal proceeding" and requires "conviction of an underlying" crime.

*Id.* at 328.

78.     Those conditions are absent in this case.  The civil FBAR penalty can be imposed even

where, as here, the Secretary chooses not to undertake a criminal action.  *Id.*

79.     In 31 U.S.C. § 5322, Congress separately provided criminal penalties to punish those

who willfully fail to file FBAR forms.  Congress described the criminal penalties – but not the

civil penalties – as "fine[s]."  31 U.S.C. §§ 5322(a) & (b); *c.f. One Lot Emerald Cut Stones &*

*One Ring v. United States*, 409 U.S. 232, 236–37 (1972) (civil forfeiture provisions, as distinct

from parallel criminal provisions, are remedial for double jeopardy purposes).

80.     The civil FBAR penalty is instead at least partially remedial, which is to say that it has

the "purpose of compensating the Government for a loss." *Bajakajian*, 524 U.S. at 328.

81.     The penalty compensates the government for both tax loss and for the costs of enforcement of the Bank Secrecy Act.

82.     When Congress enacted the Bank Secrecy Act ("BSA"), Pub. L. No. 91-508, 84 Stat. 1114 (1970), it called the use of "secret foreign bank account[s]" the "largest single tax loophole permitted by American law," and one that caused the "debilitating effect[]" of "hundreds of millions" of dollars in lost tax revenues.  H.R. Rep. No. 91-975 (1970), reprinted in 1970 U.S.C.C.A.N. 4394, 4397–98.  Investigating secret bank accounts is time consuming and expensive.  *Id.* at 4397.

83.     The civil penalties in § 5321 serve to offset these losses to the Treasury.  *See United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1369–73 (M.D. Fla. 2018) (civil penalty for willful failure to file FBAR is remedial, not punitive, in nature).

84.     Viewing civil FBAR penalties as remedial is consistent with the Supreme Court's analysis in *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938) (holding that civil tax penalties are remedial).[5]

85.     Courts routinely have held that even very substantial civil tax penalties − such as the 75-percent civil fraud penalty (26 U.S.C. § 6663(a)) − are not fines within the meaning of the Eighth Amendment.[6]  *See, e.g.*, *Kitt v. United States*, 277 F.3d 1330, 1337 (Fed. Cir. 2002);

---

[5]  It is true that "all civil penalties have some deterrent effect," *Hudson v. United States*, 522 U.S. 93, 102 (1997), but the fact "[t]hat a statute serves to deter future conduct does not automatically render it punitive."  *Garner v. U.S. Dep't of Labor*, 221 F.3d 822, 827 (5th Cir. 2000).

[6]  Although the civil FBAR penalty is not a Title 26 "tax" penalty, it is more analogous to a non-punitive civil tax penalty than to the forfeiture tied to the criminal conviction that was at issue in *Bajakajian*.  The civil FBAR penalty is, accordingly, not a "fine" within the meaning of the Eighth Amendment.  *Cf. Korangy v. FDA*, 498 F.3d 272, 277 (4th Cir. 2007) ("Civil fines serving remedial purposes do not fall within the reach of the Eighth Amendment."); *Cole v. United States Dep't of Agriculture*, 133 F.3d 803, 807 (11th Cir. 1998) (remedial civil penalty is not a "fine" subject to Eight Amendment scrutiny).

*Louis v. Commissioner*, 170 F.3d 1232, 1236 (9th Cir. 1999); *see also Dewees v. United States*, 272 F. Supp. 3d 96, at 99–101 (D.D.C. 2017) ($120,000 in civil tax penalties for failure to report ownership of a foreign corporation over 12 years was remedial and not subject to the Eighth Amendment, even though "[t]he total penalty was based entirely on [the target's] failure to file; he was not liable for any unpaid taxes").

### ii. *The civil FBAR penalties at issue are not constitutionally excessive.*

86.     The Court need not resolve whether the civil FBAR penalties here constituted fines because, even if they did, the penalties were not excessive.

87.     In addressing excessiveness challenges, the Courts of Appeals consider factors used by the Supreme Court in *Bajakajian* to determine whether a fine is grossly disproportionate, including:  (1) the amount of the penalty authorized by Congress; (2) the class of persons for whom the statute at issue was principally designed; (3) the nature of the offense; (4) the harm caused by the defendant's conduct; and (5) a comparison with the potential criminal penalties, including imprisonment.  *See, e.g.*, *United States v. Cheeseman*, 600 F.3d 270, 283–84 (3d Cir. 2010); *United States v. Bikundi*, 926 F.3d 761, 794–95 (D.C. Cir. 2019).

88.     The burden of proof rests on Mr. Collins to show that the penalty is excessive under these factors.  *Cheeseman*, 600 F.3d at 283.  He has not carried that burden.

89.     The penalties assessed against Mr. Collins fall within the congressionally prescribed range, which has an upper limit for each account each year of the greater of $100,000 or 50 percent of the account balance.  *See* 31 U.S.C. § 5321(a)(5)(C).  The IRS-assessed penalties represent only a fraction of the overall maximum penalty Congress provided for the totality of Mr. Collins's conduct, which makes the assessments presumptively constitutional.  *See Qwest*

*Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061, 1069 (8th Cir. 2005); *Kelly v. U.S. EPA*, 203 F.3d 519, 524 (7th Cir. 2000).  The first factor favors Plaintiff.

90.     Acts of Congress are entitled to a strong presumption of constitutionality, *e.g.*, *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963), and the Supreme Court emphasized in *Bajakajian* that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature."  *Id.*, 524 U.S. at 336.  Courts therefore give substantial deference to legislative judgments regarding the appropriate penalty.  *See, e.g.*, *United States v. $134,750 U.S. Currency*, 535 F. App'x 232, 240 (4th Cir 2013); *Collins v. SEC*, 736 F.3d 521, 527 (D.C. Cir. 2013).

91.     The second *Bajakajian* factor also favors Plaintiff.  Mr. Collins falls squarely within a class of individuals targeted by the Bank Secrecy Act − *i.e.*, he is a United States citizen who hid large sums of assets in an undisclosed financial account in a foreign county with bank secrecy laws.  *Garrity*, 2019 WL 1004584 at *7 ("The FBAR penalty targets individuals who fail to disclose their interest in foreign accounts.").

92.     The third and fourth factors, the nature of Mr. Collins's actions and the harm he caused, additionally weigh against a finding of excessiveness.  Mr. Collins acted willfully − which means that his actions fall into the more serious category of FBAR violations, for which Congress authorized a 50-percent penalty.  31 U.S.C. § 5321(a)(5)(C).  In enacting the Bank Secrecy Act, Congress explained that "secret foreign bank accounts" have enabled the proliferation of crime, including tax evasion, securities violations and fraud.  H.R. Rep. No. 91-975, at 12, *reprinted in* 1970 U.S.C.C.A.N. at 4397-98.  When it increased the maximum willful FBAR penalty, Congress announced that improving compliance was "vitally important."  S. Rep. No. 108-192, at 108.

93.     Secretive offshore activity − like that engaged in by Mr. Collins − has "vast"
consequences and significantly harms the integrity of the tax system.  H.R. Rep. No. 91-975,
reprinted in 1970 U.S.C.C.A.N. at 4397.  That Congress based the willful FBAR penalty on the
account balance reflects a judgment that the harm to the tax system increases with that balance,
irrespective of the size of any correlated tax loss.  *Chaplin's, Inc.*, 646 F.3d at 852 ("Congress
. . . can distill the monetary value society places on harmful conduct"); *United States v. Mackby*,
339 F.3d 1013, 1019 (9th Cir. 2003) (harm of false claims "extends beyond the money paid out
of the treasury").

94.     As for the last *Bajakajian* factor, the penalties at issue are not excessive when compared
with the potential criminal sanctions for Mr. Collins's actions.  Those sanctions include
imprisonment of up to five years in addition to a fine of up to $250,000 for an FBAR offense
standing alone (and double that if there are other violations or a pattern of illegal activity).
31 U.S.C. § 5322(a)–(b).  The criminal penalties include a substantial fine in addition to the
prospect of a prison term − a consequence much more serious than even the maximum civil
penalty permitted by § 5321(a)(5)(C).  *Cf. Mackby*, 339 F.3d at 1018 (noting that "when courts
have compared civil judgments with criminal penalties for the same conduct, they have
considered the full criminal penalty").[7]

95.     All of the *Bajakajian* factors weigh against the conclusion that the penalties assessed
against Mr. Collins violate the Eighth Amendment.

96.     Even if the Court additionally considers Mr. Collins's ability to pay under *United States*
*v. Viloski*, 814 F.3d 104 (2d Cir. 2016) and *United States v. Levesque*, 546 F.3d 78 (1st Cir.

---

[7] The potential criminal FBAR fine amounts at issue here are a far cry from *Bajakajian*, where a
$357,144 forfeiture was held grossly excessive in light of the maximum criminal fine for the
same offense being only $5,000.  *See* 524 U.S. at 339–40.

2008), he has not carried his burden of demonstrating that imposition of the willful FBAR

penalties would deprive him of his livelihood.  Among other things, Mr. Collins receives three

different monthly retirement benefits, holds over $1.3 million in foreign accounts, and was

unwilling or unable to estimate the size of his domestic investment holdings or retirement

accounts.  (Trial Tr. at 194:24–197:15; Pl.'s Ex. 61 at Form 8938.)  He also admitted that, after

the IRS had proposed the willful FBAR penalties at issue, he transferred assets into an

irrevocable family trust that currently holds $2.5 million.  (Trial Tr. at 198:6–17.)  These are not

signs that Mr. Collins will "never recovery financially from paying this penalty."  (Doc. 42

at 15.)

97.     The willful FBAR penalties assessed against Mr. Collins (which were well below the

statutory maximum) are not unconstitutionally excessive under the Eighth Amendment.

*See, e.g.*, *United States v. Bussell*, 699 F. App'x 695, 696 (9th Cir. 2017) (penalty representing

half of the account value for the year at issue was "not grossly disproportional to the harm

[the violator] caused because [she] defrauded the government and reduced public revenues"),

*cert. denied* 138 S. Ct. 1697 (2018); *Garrity*, 2019 WL 1004584 at *1, *6–9 (willful FBAR

penalty of 50 percent of an account's $1,873,382 balance was not excessive); *Estate of

Schoenfeld*, 344 F. Supp. 3d at 1359, 1375 (willful FBAR penalty of 50 percent of an account's

$1,228,600 balance was not excessive).

    Consistent with the above Findings and Conclusions, the Court hereby enters the

following:

**ORDER**

The FBAR penalties imposed by Plaintiff, against Defendant Richard Collins,

are **AFFIRMED, UPHELD and ORDERED**, in the total amount of **$308,064.00** ($154,032.00

for 2007, and $154,032.00 for 2008).  By **February 16, 2021**, Plaintiff shall submit a proposed

judgment order, including an updated calculation of Defendant's liability as of the date of

judgment, including any applicable and appropriate fees, penalties and interest; and a brief

containing legal authority in support thereof.  Once Plaintiff's submission is made, the Court will

enter an order providing Defendant a brief period (one week) to be heard regarding Plaintiff's

proposals.[8]

IT IS SO ORDERED.


February 8, 2021                                                      s/Cathy Bissoon_____
                                                                     Cathy Bissoon
                                                                     United States District Judge


cc (via ECF email notification):

All Counsel of Record

---

[8]  Although it remains entirely the parties' prerogative, the Court urges both sides to consider
whether, in exchange for finality, they can now reach agreement regarding the additional
assessments, if any, that should be levied.  From its inception, this case has − in the
undersigned's view – remained one particularly amenable to a reasonable, amicable resolution.
The Court may intuit that one or both sides were adamant, in regards to "having their day in
court."  That day in court having been had, it seems time for both sides to weigh the virtues of
finality, and being able to move on with their lives; against the cost of continuing in protracted
legal squabbles regarding whether the judgment will stand, and whether additional weight must
attach to any "pound of flesh" exacted.